UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION


UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    ) Case No.
            vs.                     ) 12-CR-3045-MDH-1
                                    )
                                    )
CHARLES FREDERICK WHITE,            )
                                    )
            Defendant.              )


                    SENTENCING
        BEFORE THE HONORABLE M. DOUGLAS HARPOOL
        WEDNESDAY, SEPTEMBER 20, 2017; 9:35 A.M.
                SPRINGFIELD, MISSOURI



APPEARANCES:


FOR THE PLAINTIFF:          MR. PATRICK J. CARNEY
                            UNITED STATES ATTORNEY'S OFFICE
                            901 St. Louis, Ste. 500
                            Springfield, MO 65806


FOR THE DEFENDANT:          MR. JASON COATNEY
                            LAW OFFICES OF JASON COATNEY
                            939 N. Boonville, Ste. C
                            Springfield, MO   65802


COURT REPORTER:             MS. JEANNINE RANKIN, RPR, CSR
                            UNITED STATES DISTRICT COURT
                            222 N. Hammons Parkway
                            Springfield, MO  65806



    Proceedings recorded by mechanical stenography;
transcript produced by computer.

```
1                    USA v CHARLES F. WHITE

2                CASE NO. 12-CR-3045-MDH-1

3                        SENTENCING

4                    September 20, 2017

5                     *  *  *  *  *  *

6         THE COURT:  We are here for sentencing of Charles

7  Frederick White.  Who appears on behalf of the United States?

8         MR. CARNEY:  May it please the Court, Your Honor.

9  United States appears by Patrick Carney on behalf of Timothy

10 Garrison.

11        THE COURT:  And the defendant appears by?

12        MR. COATNEY:  Jason Coatney, Your Honor.  Good

13 morning, sir.

14        THE COURT:  Mr. White, would you stand.

15        My name is Doug Harpool.  I'm a federal district

16 judge and it's my responsibility this morning to sentence you

17 for the crime of conspiracy to manufacture a thousand or more

18 marijuana plants.  That's a violation of 21 U.S.C. 846, 841(a)

19 and (b)(1)(A).  It is a Class A felony.

20        The law instructs me to sentence you to a sentence

21 which is sufficient but not greater than necessary to meet

22 objectives of the U.S. sentencing laws.  In deciding what your

23 sentence should be, then, the first thing we'll do is consult

24 those laws and determine what the law allows for a sentence

25 for you, what it authorizes.  We'll then look at the U.S.
```

Sentencing Guidelines and see what they have to say about a
guideline sentence for you.  We'll then listen to the lawyers'
arguments about factors that I should consider in sentencing
that are described in Title 18, Section 3553(a).  The lawyers
will make recommendations to me about your sentence and then
I'll give you an opportunity to say something to me if you
want to.  You don't have to say anything.  I won't hold it
against you if you remain silent.  When that's finished, I'll
make a final decision on what your sentence should be.  All
right?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Go ahead and be seated.
Although I do want to ask you, did you read the presentence
investigation report?

THE DEFENDANT:  Did I read it?

THE COURT:  Yeah, or have it read to you?

THE DEFENDANT:  We didn't never get -- we only got
about halfway through it.

Yes, sir.

THE COURT:  All right.  And the -- I have to -- I've
read everything that's been submitted to me.  I've read some
briefing, I've done some independent research on my own but I
haven't made a final decision on what I'm going to do in your
case, so let's get started.

Counsel, the statute that I referenced earlier which

3

1   creates this crime appears to require a sentence of at least
2   ten years and as long as life in prison, supervised release of
3   not less than five years, a fine as high as $10 million and
4   then payment of a $100 special assessment.

5          Any disagreement that that's the statute with which
6   we're dealing with?

7          MR. CARNEY:  No disagreement from the government,
8   Your Honor.

9          MR. COATNEY:  No disagreement, Your Honor.

10          THE COURT:  All right.  The presentence
11   investigation concludes that under the sentencing guidelines
12   the offense level should be set at 35 and the criminal history
13   at six.

14          This may have been explained to you but I always
15   like to do it on the record, Mr. White.  Under the U.S.
16   Sentencing Commission -- that's an institution created by
17   Congress -- and the Supreme Court has ruled that in every case
18   every federal district judge has to adopt -- or calculate what
19   the sentence would be if it was imposed according to the
20   sentencing guidelines of the U.S. Sentencing Commission.
21   That's federal courts from Puerto Rico to Hawaii to Missouri,
22   everywhere.  We use the same book, the same criteria.

23          It requires two things in order to calculate a
24   sentencing guideline.  You first assign a number to your
25   offense -- it goes as high as 43, is my recollection -- and

4

1   then you calculate your criminal history.  That's based on

2   your past.  That goes as high as six.  So across the top of

3   the chart it goes one to six, then down the column it goes up

4   to 43, then on the chart in the back you see where the two

5   meet on the chart and that's what the guideline sentence is.

6           With an offense level of 35 and a criminal history

7   of six, your guideline sentence as suggested by the U.S.

8   Sentencing Guidelines would be a sentence of between 210 and

9   262 months.

10          Is there an objection to the offense level or the

11   criminal history category which this Court needs to address?

12          MR. COATNEY:  Your Honor, we filed objections to

13   this.  In terms of his criminal history category, no.  There

14   was one, Paragraph 29 on page 8, Your Honor.

15          THE COURT:  All right.  That's the -- in the

16   criminal history category, then, it's the assessment of one

17   point based on the '02 conviction for possession of a

18   controlled substance with intent to distribute?

19          MR. COATNEY:  Yes, Your Honor.

20          THE COURT:  What is your objection?

21          MR. COATNEY:  Your Honor, there's no objection to

22   that.  Never mind.

23          THE COURT:  All right.  There is an objection, I

24   noticed, at least in writing, to the two-point enhancement for

25   maintaining a premises for the purpose of manufacturing,

5

distributing controlled substance on page 5, Paragraph 15.  I

didn't know if you wanted to withdraw that or you wanted to

argue it or just wanted me to rule it based on what you had

written?

MR. COATNEY:  Please rule upon it based upon what's

written, Your Honor.

THE COURT:  Does the government wish to be heard on

that objection?

MR. CARNEY:  Nothing beyond what Mr. Garrison has

already argued to the Court, Your Honor.

MR. COATNEY:  I guess I would say this, Judge.  He's

got a home and he's using a building for these growing

purposes.  It seems to me that this maintaining the entire

premises for this or enhancing this for this purposes is --

it's not the intent.  He didn't go purchase this property to

do this.  It wasn't designed to cover this up.  It was his

home.

THE COURT:  Let me ask -- and I'm going to let you

both answer this.  I realize that he was growing a lot of

marijuana plants.  Was he growing them in a warehouse, in a

barn, out in the field?

MR. COATNEY:  A barn.

THE COURT:  All right.  Was there any agricultural

use being made of the premises other than marijuana growth?

MR. COATNEY:  That's it, Your Honor.

1     THE COURT:  The Court is going to overrule that
2 objection.  The objection to page 5, Paragraph 15 is
3 overruled.
4     There's a -- there are other objections, I notice,
5 that don't go to the offense level, they're just to the
6 factual material.  Those are noted and no admission by the
7 defendant is made as to any material that is objected to.
8     MR. COATNEY:  Your Honor, Mr. White would like me to
9 suggest to the Court in terms of the overall amount, the
10 sentencing guidelines calculate the amount of marijuana grown
11 by converting the plant to a specific weight of marijuana and
12 he believes that based upon his growing system that the plants
13 would not grow to a full size that would produce that type of
14 weight associated with the sentencing guidelines, that it
15 would be something much smaller, and therefore it would not
16 rise to the level of the statutory minimum under 21 U.S.C.
17 Section 841.
18     THE COURT:  All right.  I'm going to look at 2D1,
19 the drug calculation guideline.
20     The presentence investigation report, as I
21 understand it, has used a quantity of between 100 kilograms
22 and 400 kilograms and therefore found an offense level of 24.
23 What quantity does your client claim?
24     THE DEFENDANT:  May I say something?  When you grow
25 inside, Your Honor, you don't grow a great big, giant plant,

7

```
 1   8-, 10-, 12-feet tall kind of situation and --

 2             THE COURT:  I understand that argument, but what I'm

 3   trying to figure out is is there a quantity you agree would

 4   have been produced by the number of plants that you had in

 5   production?

 6             THE DEFENDANT:  Yes.  In my barn that was on my

 7   property, I'd say 10 to 12 pounds.

 8             THE COURT:  Ten to 12 pounds?

 9             THE DEFENDANT:  Yes, sir.

10             THE COURT:  What's the government say?

11             MR. CARNEY:  Your Honor -- and I apologize, I'm not

12   Mr. Garrison so I'm not as familiar with the facts of this

13   case as he would be -- I would note that this was over 1700

14   plants.  I believe that the conversion rate is properly stated

15   within the PSR.  To believe that 1700 plants would only create

16   10 to 12 pounds, Your Honor, I think is -- I think it's

17   misleading.  I think it's self-serving.

18             THE DEFENDANT:  There was three barns, Your Honor,

19   and each barn, what I understand, would have about the same as

20   what mine did, 10 to 12 pounds each.  We've got a picture of

21   it in the discovery that shows the plants, what size they are,

22   and none of them were over 2-feet tall.  In fact, the ones

23   that are hanging --

24             THE COURT:  At the time they were seized the

25   question is how big would they have gotten.
```

```
 1          THE DEFENDANT:  They're about this big, sir
 2   (indicating).
 3          THE COURT:  That doesn't help us for the record
 4   because that record just -- Mr. Coatney, you want to try to
 5   describe what your client just said in words so it will be
 6   preserved?
 7          MR. COATNEY:  He was using two hands to indicate
 8   about a 2 1/2-foot tall plant, Your Honor.
 9          What he's suggesting is is that based upon the
10   system for which the plants were being grown, they would not
11   produce a plant that would be something similar to what would
12   be outdoors and produce the amount of marijuana that would be
13   associated with how the sentencing guidelines would be
14   typically calculated.
15          THE COURT:  Let me ask you this.  Does quantity in
16   any way impact the minimum sentence or would he still be
17   subject to the minimum sentence regardless of the quantity?
18          MR. COATNEY:  It's where the guidelines and the
19   statute clash again, Your Honor.  The statute references
20   plants and doesn't discern what the size of the plant is.  Its
21   cutoff is one thousand plants.
22          THE COURT:  It's the guidelines that get interested
23   in how much quantity was produced?
24          MR. COATNEY:  Correct.
25          THE COURT:  Well, I'll tell you, it's my intent to
```

9

1  sentence way below the guidelines, so I don't know that this

2  is a discussion that in the end has any impact on the actual

3  sentence I'm going to impose.

4        THE DEFENDANT:  This little book right here, the

5  reason I brought this, this explains the whole situation there

6  on how to grow, and when you grow inside, sir, you just grow a

7  short little bushy plant.

8        THE COURT:  For the record, if, Mr. Coatney, you

9  want to read into the record the identity of that book, you

10  may.

11       MR. COATNEY:  Yes, Your Honor.  It's Ed Rosenthal's

12  *Marijuana Grower's Handbook*.  It was a book that was seized by

13  the government during the search of the home and was turned

14  over to Mr. White as an exhibit.

15       THE COURT:  All right.

16       I'll let the government address, in just reading the

17  presentence investigation report, I can't really discern how

18  the 100 kilograms to 400 kilograms was arrived at.  Is that a

19  per-plant calculation?

20       MR. CARNEY:  I believe it is, Your Honor.  I believe

21  it was based upon the experience of the agents who actually

22  seized -- who actually raided the property and seized the

23  plants and then they did their estimations from there on what

24  the normal production yield would be from each one of those

25  plants.

Case 6:12-cr-03045-MDH   Document 199   Filed 10/12/17   Page 10 of 27

```
 1              THE COURT:  Is it in a report from the agents or
 2   something?  I'm up here thinking I have to have some basis on
 3   which to make this decision and all I have is the calculation.
 4   I'm sure there's something somewhere that led to this
 5   calculation but it's not available to me.
 6              MR. COATNEY:  If I may, Mr. Carney?
 7              MR. CARNEY:  Uh-huh.
 8              MR. COATNEY:  Your Honor, there's a conversion table
 9   within the guidelines that says for X number of plants equals
10   Y number of quantity.
11              THE COURT:  There's no -- the guidelines does not --
12   do not differentiate between plant size or type of plants or
13   anything like that?
14              MR. COATNEY:  No, it doesn't concern itself with the
15   size of the plant.
16              THE COURT:  I'm going to overrule your objection to
17   the quantity.  As I said, in the end it's not going to impact
18   my sentence because I'm going to go way below the guidelines
19   in terms of the sentence I'm going to impose.  At least that's
20   my intent for several reasons and I'll explain those more
21   later.
22              Any other objection we need to take up or consider?
23              MR. COATNEY:  No, Your Honor.
24              MR. CARNEY:  Your Honor -- and this is just for
25   accuracy's sake.  I certainly understand the Court's
```

11

```
 1   statements and certainly the government's intention to adhere

 2   to its plea agreement as well.  And I may be using the

 3   wrong -- I'm using a more recent guidelines book.  But with

 4   the offense level of 35 and criminal history score of six, I'm

 5   reading the guideline range of being 292 to 365.  I didn't

 6   know if I had missed something.  I wasn't privy to any of the

 7   other prior conversations; I'm only here on Mr. Garrison's

 8   behalf.  If I'm missing something, I apologize.

 9           THE COURT:  Actually, that's what I have too.  If it

10   was a 35 and a six, it is 292.  The 210 to 262 would be if it

11   was an offense level of 32.

12           MR. CARNEY:  That's correct, Your Honor.

13           PROBATION OFFICER:  That is correct, Judge.  So that

14   is incorrect in the PSR.

15           THE COURT:  Okay.  So it is 292 to 365 would be the

16   guideline sentence range.  I'm going to adopt that as my

17   guideline sentence.

18           Let's go on and talk about what this defendant's

19   sentence should be in this case.  Obviously it has to be

20   something Congress allows me to do, but then I am able to

21   consider and I have to consider the guidelines.  But now let's

22   talk about what this sentence should be.

23           What is your recommendation, Mr. Carney?

24           MR. CARNEY:  Your Honor, on behalf of Mr. Garrison

25   the government did file a sentencing memorandum.  We are
```

requesting the mandatory minimum of 10 years as is authorized
by Congress for the particular offense to be followed by a
supervised release of five years, Your Honor.  We're also
asking for payment of special assessment of $100.

Your Honor, Mr. Garrison went into some detail in
the sentencing memorandum to the Court that was filed on
July 26th of this year.  We would just highlight that given
the defendant's age, physical infirmity, we believe that the
mandatory minimum is the appropriate sentence in this case.

THE COURT:  Let me ask you.  It is your position on
behalf of the government that the mandatory minimum, there is
no mechanism by which under the guidelines the mandatory
minimum may be set aside; is that correct?

MR. CARNEY:  Absent the filing of a 5K motion for
downward departure, Your Honor, I'm unaware of any mechanism
to allow us to go below that.

THE COURT:  And health and age concerns alone, in
the position of the government, are not sufficient to
disregard the Congress's order on a minimum sentence?

MR. CARNEY:  That's correct, Your Honor.

Thank you, Your Honor.

THE COURT:  You'll recall we had this set for
sentencing earlier and I specifically asked the parties to
look into that issue because of the health issues faced by
this defendant and I think both sides did.  I guess I haven't

13

1    seen anybody tell me they think there's anything that allows
        2    me to disregard the mandatory minimum.

        3            MR. COATNEY:  I actually found the sort of reverse
        4    of it, Your Honor, several cases that -- what I looked at
        5    specifically was home confinement based upon certain factors
        6    that would come under departure issues for the guidelines.
        7    There's plenty of authority that allows you to do that;
        8    however, it goes up against the statute.  And the only
        9    mechanisms to get below the statute are 3553(e) and 3553(f).
        10   (f) is the safety valve.  Because of Mr. White's criminal
        11   history category, he's not eligible for that.  Mr. Garrison
        12   and I discussed 3553(e) and if there was some mechanism for
        13   getting there but he felt like that wasn't something that was
        14   possible.  So, you know, you're left with the statute.

        15           And it's an interesting sort of time, Judge.  I
        16   recognize that Mr. White's been before a court like this
        17   before and under certain circumstances you would say, Well,
        18   looking at 3553(a), what are we focused on here in terms of
        19   Mr. White?  He's never engaged in any violence.  He's never
        20   been accused of trafficking or anything like that in terms of
        21   cartel or trafficking to kids or otherwise.

        22           An interesting change in the law occurred in 2013
        23   where the government started looking at those types of factors
        24   and saying, Are we going to try and prosecute those people?
        25   They made that decision to only sort of analyze those

                                        14

questions in specific states where the voters of those states
had decriminalized marijuana within their jurisdiction and
that obviously runs afoul of the Controlled Substances Act.
And it leaves -- and the phrase I've used with the Court
before is it's sort of a schizophrenic state as it relates to
our drug policy.  You've got the Department of Justice on one
street in Washington, D.C., and the IRS on the other side of
the street and they're fighting each other over the way
they're treating marijuana manufacturing in the United States.
The DOJ is allowing it to occur in some areas.  The IRS is
still taxing everybody at a 100 percent rate because it
violates the Controlled Substances Act.  So even our own
government when they're facing each other in Washington, D.C.,
are taking different policies.

          I understand it's not legal in this state.  There is
a state within our circuit where it's legal and they're
issuing licenses now to businesses to do exactly what you're
going to send him to prison for.

          THE COURT:  Does your client wish to address the
Court?

          MR. COATNEY:  He does, Judge.  This is a pretty
lengthy letter that he's written.  He's asked that I read it
because his eyes are infirm, Your Honor.

          THE COURT:  That's fine.  You may do so.

          MR. COATNEY:  Yes, sir, please.

15

THE COURT:  I'll warn you, because you're reading,
don't go too fast so our court reporter can get it all down.

MR. COATNEY:  Yes, sir, Judge.  Thank you.

(As read by Mr. Coatney.)

"Judge Harpool, I thank you for giving me this
semi-final opportunity to plead my case for possible rational
consideration by Your Honor and P.A. Mr. Garrison.  The
eventual reality of having to speak in public courtroom is a
frightening prospect for me and most likely would be a
devastating failure.  Some people relish the opportunity to
express themselves, I do not.

"I will attempt to stand as long as possible to
speak of the hurt, anguish and monetary stress that I have
thrust upon my older brother, the reverend Dr. Jim White.  His
counseling and prayer applications has sustained me these five
and a half years with 31 months in deplorable Greene County
Jail, a holding pen facility.  Having spent my first month in
real FDC in Englewood, Colorado, the difference is
overwhelmingly cruel here.  During my fearful hallucination I
will attempt to show and reflect my true heart of hearts,
remorse to everyone damaged by my stupidity, ignorance and
violation of federal laws of our great country.  I will be
punished accordingly, I'm sure.  For simplicity sake, I've
written a type of rambling monologue mixed with commentary
that can all be fact checked for authenticity.  My sources

16

1   were documentaries by NPR, USA Today, Find Law, Harvard

2   Research Institute, Federal Research from Scottsdale Research

3   Institute, Phase No. 2, Ms. Sue Sustey," S-U-S-T-E-Y,

4   "American Epilepsy Association, VA approval, and Dr. Casette,"

5   C-A-S-E-T-T-E, "M.D. neuropathic back surgeon, his recent

6   medical findings and novel.

7          All of the below illnesses have shown that marijuana

8   will slowly and possibly stop the progression and sometimes

9   cure the pain or disease.  Please note here that marijuana has

10  no carcinogens when grown organically and has not been linked

11  by consumption to any single death.  To illustrate, my lungs

12  have been x-rayed six to eight times and are in excellent

13  condition.  Below is my research findings along with

14  Dr. Teri," T-E-R-I, "Joe Gradon," G-R-A-D-O-N, "M.D. of the

15  family Pharmacy NPR.

16         "Neuropathic back pain, cancer, glaucoma, AIDS, HIV,

17  Hepatitis C, LSA, Tourette's Syndrome, Crohn's disease, PTSD,

18  ulcer colitis, severe arthritis, fibromyalgia, Alzheimer's

19  disease, autism CBDs, epilepsy, seizures, CBDs, multiple

20  sclerosis and macular degeneration of eyes.  Note, CBDs have

21  no THC and are available through doctors in over 40 states

22  presently.

23         "Israel dominates marijuana research especially

24  CBDs.  Their nursing homes all smoke pot.  The United Kingdom

25  is second only in research to Israel.  Canada and Mexico have

17

recently approved medical marijuana usage.  Uruguay in South
America is totally legal, as are over a half dozen European
countries.  Recently pot is now on the Canadian USA stock
exchange.  Two companies are Internet linked under Pot for
Profit.  Canada -- can and profit from pot manufacturing --
can profit from pot.com.

          "The latest poll showed pot for medical approval is
93 percent nationwide and 59 percent for recreational pot
usage.  Pot is now legal for 35 grams in Kansas City and
Columbia, Missouri.  Thirty-one states have approved medical
pot with 8 recreationally.  As of June 2017 West Virginia's
state Congress is the first state to legalize pot without an
election vote.  In the spring of 2016 Congress asked the DEA
to reclassify marijuana.  The DEA denied it because of no
scientific proof of medical benefits.  How can research begin
without their approval?  So pot remains a Schedule I with
heroin.  Something is terribly wrong here.

          "I was wrong in disobeying the Court and Congress's
intent and I know you are only following what they have
ordered.

          "Judge Russell Clark said at my last sentencing in
January of 1990:  This seems excessive.  A year or so later he
approved a reduction of five years' supervised release to
three years.  He was a good man.

          "This year two more federal judges, Mark Bennett of

18

the northern district of Iowa and Jim Gray Jr. and senior of
southern California have both said:  The punishment does not
fit the crime.  His medical problem and the mandatory minimums
are warranted and 80 percent of mandatory minimums are unfair
and, yes, I've considered resigning but I'm not ready yet.
Because of the Lynn Bias athlete death that Congress did not
confer with any of his 640 constituents or the BOP, judicial
system and the medical experts that the medical marijuana and
the get tough on crime bill was unworthy of such Draconian
punishments.

        "In closing, I'm only pleading your cooperation in
honoring my plea agreement and the verbal agreement that
Mr. Garrison said he would consider a positive ruling.  I
understand that BOP has the final say-so authority, not you.
Below are the four considerations.  Any downward departure
would be retroactive for me, placement at a Springfield
medical housing Unit No. 9 at the federal medical center, camp
custody level and compassionate relief for macular
degeneration of the eyes, knee problems, swollen legs, high
blood pressure, teeth denture problems, hepatitis C, allergies
and overweight problems.  No. 4 is the drug education program.
And any kind of sentence reduction that becomes available if
the law is changed.

        "I do sincerely appreciate your time and
consideration.  I've been taught and believe in praying not

1   only for my friends, family and foes but for you and
2   Mr. Garrison nightly and every morning.
3           "Respectfully submitted, Charles White."
4           THE COURT:  Any reason I shouldn't impose sentence
5   at this time?
6           MR. CARNEY:  No, Your Honor.  Thank you.
7           MR. COATNEY:  No, Your Honor.
8           THE COURT:  I'm going to let you stay seated because
9   it looks like you were struggling a little bit when you had to
10  stand up.  I'm going to impose sentence at this time.
11          Let me -- let me say, first of all, that I
12  understand there is severe disagreement in the -- among
13  criminal justice system as to how to treat marijuana.  Those
14  states that have put it up to a vote have generally approved.
15  I don't know if they all have but many, many have, have
16  approved medical marijuana, others have approved even a
17  broader use of marijuana.  And yet the public just
18  overwhelmingly elected a president who appointed an attorney
19  general who has said he is going to reverse lack of
20  enforcement of marijuana laws and become aggressive again.  So
21  if there's such overwhelming approval of the change in
22  marijuana laws, it's not yet reflected in the elections.
23          Congress certainly could change this law at any
24  time.  The Missouri legislature could have changed Missouri
25  law at any time.  In Missouri it hasn't even been placed on

```
 1   the ballot yet.  There is an effort to do that, I understand,
 2   and it may happen this year but they haven't been able to get
 3   enough to put it on the ballot and the legislature hasn't
 4   approved it.  And while it's been decriminalized in a couple
 5   cities, that doesn't make it legal to use in those cities if
 6   the state wants to pursue charges.
 7           It is my responsibility to pursue the law as it's
 8   now written.  I once was in the state legislature, by the way,
 9   got to write laws.  That was 25 years ago.  Now I'm a judge
10   and I have to enforce the law that others write.  Much of the
11   message that you read to me is properly directed to the
12   legislators about the need for change or the arguments for
13   change.
14           For me it is concerning -- and then you've
15   acknowledged your failure in this regard -- that in this
16   country we don't get to pick and choose which laws we follow.
17   We don't get to just follow the ones we agree with.  We have
18   to follow all of them.  And I understand that you don't agree
19   with this law and that many, many don't agree with these laws
20   about marijuana but as a citizen we still have an obligation
21   to follow them, and you didn't and you haven't repeatedly.
22           In 1980 in Oklahoma, cultivation of marijuana; in
23   1989, manufacturing marijuana -- I think that's the one you
24   mentioned Judge Clark sentenced you on -- possession of a
25   controlled substance with intent to distribute when you were
```

21

61 in '02, and here you are again.

No matter how fervently you may believe the marijuana laws are wrong, civilized society can't tolerate someone repeatedly violating a law just because they don't agree with it.  To the extent -- and I remind you that under the current law you're facing a minimum of 10 years in prison and you could be sentenced for the rest of your life, which for a young person shows there's still severe consequences.  And I realize some states license people to grow marijuana but Missouri is not one of them.  Even in those states there are severe regulations and taxation that are accompanied with licensure.

Your guideline here, the sentencing experts in our country, the U.S. Sentencing Commission, say that someone with your criminal history who did what you did ought to go to prison for 292 to 365 months.  So there's little doubt that your persistent disregard for the law in the eyes of the sentencing experts call for and justify a very severe sentence.

It is my intent to give you the minimum sentence recommended by the government.  Frankly, it would have been my preference if we could have found a charge to give you that wouldn't have a minimum sentence with it, but they have their job and I have my job.  And you are guilty of this crime and therefore you have to be sentenced the way the Congress says

1    you should be sentenced for this crime.

2         I postponed your last sentencing hearing because I
3    did a lot of independent research, frankly, to try to find a
4    way around the minimum sentence, including calling the U.S.
5    Sentencing Commission and asking for input if there was a way
6    to get around it.  And they mentioned the safety valve portion
7    of the statute, which you don't qualify for because of your
8    criminal history, as your lawyer said.  What we call a 5K
9    agreement is when you provide information to the government
10   that's helpful for convicting other people and you don't have
11   that kind of agreement nor that kind of situation.  And that
12   help and medical condition alone is not sufficient to go below
13   the minimum sentence.

14        But they did point out to me Guideline Section 1B1.
15   13.  I'm not sure that you meet the requirements of that or
16   will, but there are comments there about the medical condition
17   of a defendant.  And so I, as part of my judgment and
18   commitment, am going to encourage the Bureau of Prisons to
19   consider whether your health and age are such that you should
20   be considered for compassionate release.  Understand that's a
21   Bureau of Prisons' ultimate decision but I will reflect that I
22   would be inclined to approve any request for compassionate
23   release under certain terms if presented to me, but that
24   evaluation is by law one of the Bureau of Prisons and not for
25   me.

1          So it is the judgment of this Court that defendant

2     Charles Frederick White is committed to the custody of the

3     Bureau of Prisons for 120 months.  I'm going below guidelines

4     because of your health and medical condition based on the

5     recommendation of the government also but also my own

6     decision.  You will be placed on supervised release for five

7     years after completing the prison term.  I don't think you

8     have the ability to pay a fine; I'm not going to impose a

9     fine.  You will have to pay a $100 special assessment.

10          While you're on supervised release the defendant

11    will comply with the mandatory and standard conditions that

12    have been adopted by the Court.  In addition, you will comply

13    with the special conditions listed in Part D of the

14    presentence investigation report.

15          Again, I encourage the Bureau of Prisons to review

16    your case carefully and to determine whether or not a

17    compassionate release of some sort isn't an appropriate

18    consideration given your situation.

19          I will recommend that you be placed in the United

20    States Medical Center here in federal -- in Springfield.  I

21    know you have relatives, I think they were maybe Colorado

22    or --

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  I don't know where in Colorado is an

25    institution.  Is that a second request?  If they can't place

                                    24

```
 1  you or won't place you in the medical center here, would you
 2  prefer to be in Colorado?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Then as a secondary if they can't place
 5  you in Springfield, then I'll ask them to place you in --
 6  somewhere in Colorado at least perhaps where your family or
 7  other acquaintances can contact you.
 8              The government has counts to dismiss.
 9              By the way, I should say I sentenced you on the
10  superseding indictment, Count 1 of the superseding indictment.
11              MR. CARNEY:  Your Honor, the government would
12  dismiss at this time all other preceding indictments or
13  superseding indictments as well as the remaining counts to
14  which the defendant did not plea.  I also believe, Your Honor,
15  we are withdrawing the forfeiture allegation as well.
16              THE COURT:  Forfeiture allegation will be shown as
17  withdrawn.  I find that all remaining counts against this
18  defendant are dismissed, and in particular that's Count 1 of
19  the original indictment and Count 2 of the superseding
20  indictment plus any other counts that are pending against him.
21              Anything further on behalf of the government that I
22  need to address?
23              MR. CARNEY:  No.  Thank you, Your Honor.
24              THE COURT:  Anything further on behalf the
25  defendant?
```

Case 6:12-cr-03045-MDH   Document 199   Filed 10/12/17   Page 25 of 27

1          MR. COATNEY:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  This is not a sentence I'll

3    tell you I feel particularly good about but you know when you

4    take an oath to take an office, you swear to follow the law,

5    and this is the law and so that's what your sentence is going

6    to be.

7          Good luck to you, sir.

8          We'll be in recess.

9          (Court stands in recess at 10:17 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Jeannine M. Rankin, Federal Official Court Reporter,
in and for the United States District Court for the Western
District of Missouri, Southern Division, do hereby certify
that the foregoing is a true and correct transcript of the
stenographically reported proceedings.




                              /s/ Jeannine M. Rankin

Date:      10/12/17      Jeannine M. Rankin, CCR, CSR, RPR