IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

REC'D APR 1 1 2019

CHARLES FREDERICK WHITE, )
 )
     PETITIONER, )
 )
v. ) Case No. 6:12-CR-03045-MDH
 )
UNITED STATES OF AMERICA, )
 )
     RESPONDENT. )

## PETITIONER'S RESPONSE IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE

COMES NOW Petitioner White and presents his response in support of his motion for compassionate release.

The government correctly states that under the First Step Act of 2018, Congress gave inmates the ability to file a motion for compassionate release, an ability previously only available to the United States Bureau of Prisons (BOP). The government claims that Mr. White has not presented "extraordinary and compelling" circumstances to justify release from prison. Mr. White states that he has presented before this Court compelling circustances that justifies this Court order that Mr. White's sentence be reduced to time served and that Mr. White be compensated financially for the BOP delaying Mr. White's request for compassionate release from March or April of 2018, to February 8, 2019, causing Mr. White to hold open and maintain his stated release location for ten to eleven months. (please see paragraph one, page three of the government's motion for stay, document number 209). It is also noted that the government offers no opposition to Petitioner White's motion for compensation in the amount of $15,000 which represents the expense incurred by Mr. White and his family for holding open his release location.

Mr. White states that his request for compassionate release had been fully approved as suggested by the government's second motion for extension of time,

document number 206, docketed on January 22, 2019, in which at bullet point number eight, that Mr. White's petition had been approved and had been submitted to the next level of review when it was supposedly lost. Additionally, at bullet point number ten, the government stated they did not wish to "vex either the defendant or the Court,...and determine the status of the defendant's request." The governement, in fact, did just the opposite in that their inquiry was performed in such a manner that caused the BOP by and through Warden Nicole C. English to decline Mr. White's previously approved request without it supposedly proceeding to the next level of review, claiming the said request was missplaced.

Mr. White holds that his request for compassionate release was removed from the further purview of the BOP when his motion for compassionate release was docketed by this Court on Janaury 8, 2019, document number 201, fully one month prior to the action of the warden. The time for the warden to act in such a manner was not timely and should have been forthcoming around April or May of 2018.

In addition, Mr. White's request had progressed to the point that the Colorado Springs, Colorado Office of Probation and Parole was so notified and Parole Officer Mike Bohlens did inspect and approve Mr. White's release location on October 3, 2018, a fact the government offers no objection to. This Court should take note that orders issued for inspection of an inmates release location are not made unless the subject inmate is fully approved for near term release.

Neither does the government dispute or offer evidence to the contrary that Mr. White was fully approved for compassionate release/sentence reduction as advised on August 27, 2018, by Case Manager Johnson, Camp Administrator Dyer, and Drug Treatement Specialist, Ms. L. Williams, all staff and/or officers of U.S.P. Leavenworth Camp and that Case Manager Johnson further notified Mr. White's brother, the Reverend Doctor Jim Wilden White in a face to face meeting on December 28, 2018, stating that Mr. White had been fully approved. There was no government response to

-2-

this stated fact.  As further reference please review Mr. White's original request before this Court, docket number 201, docketed on January 8, 2019.

Therefore, because Mr. White has demonstrated multiple times before this Court, that the aging process has caused significant impairing physical conditions that are getting progressively worse, this Court should sustain Mr. White's motion for compassionate release/sentence reduction and order the BOP to release Mr. White.

## I. Procedural History

Petitioner White largely does not dispute the procedural history but does note documents 204, 205, 209, 212, and 214 were never received by him and he asks this Court to take steps to insure he receives timely copies of each document.  Mr. White further suggests that the BOP engages in mail tampering often blocking receipt of mail.  Mr. White suggests that any futher documents be sent registered mail so that the BOP can be held accountable.

## II. Legal Analysis

The government correctly establishes that in order to grant Mr. White's motion, he must demonstrate that he is not a danger to the community and that he "is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the the environment of a correctional facility and from which he is not expected to recover." (see bullet point 2b, page 12, government's response in opposition, document number 216)  Please note the wording of this requirement in that Mr. White's ability to perform activities of daily living (ADL's) only has to be diminished, not absent, and that he only needs to suffer from one age related health issue, not all of them.

 The balance of the government's presentation only serves to confuse the main issue and is in no way relevant to Mr. White's motion before this Court.

The government cites Mr. White's active conditions as listed by Dr. Aulepp of

-3-

Case 6:12-cr-03045-MDH   Document 217   Filed 04/11/19   Page 3 of 10
Case 6:12-cr-03045-MDH Document 217 Filed 04/10/19 Page 3 of 9

U.S.P. Leavenworth Camp. Those conditions include **age related** macular degeneration, Type 2 diabetes mellitus, seborrheic dermatitis, internal derangement of knee, and edema. Dr. Aulepp suggests that Mr. White's blindness and other health maladies do not impact Mr. White's ability to perform his ADL's. First, Mr. White expresses his sincere appreciation for all of the medical interventions and treatment he has been provided and this rebuttal in no way is intended to impugn the services provided by and through Dr. Aulepp. However, Mr. White respectfully disagrees with Dr. Aulepp's conclusion that his ADL's are not impacted.

First, when Mr. White was confined in the Green County Jail on or about 2/03/15, his vision in his right eye was 20/25 and his left eye was 20/20. Mr. White was undergoing acupuncture and other holistic treatments that aided him in maintaining his vision at that level. Over the course of the next two years, Mr White was denied any holistic treatment and his eyesight deteriorated to 20/70 in his left eye and declared legally blind in his right eye by Dr. Adam Carver on July 20, 2017, contact number (417) 820-9393. Recent testing which is included in the government's addendums demonstrates Mr. White's current vision at 20/80 in his left eye and 20/300 in his right eye, which represent a significant deterioration/progression. Mr. White's march to total blindness, well beyond any legal definition, is relentless.

Mr. White's ADL's are challenged daily as he is merely one step away from a broken hip or worse in an aggressive prison population in an apparent rush to navigate the hallways and living spaces, often bumping Mr. White or he bumping into them or other objects inadvertently.

Conditions at BOP facilities are largely unsafe for Mr. White when he must negotiate stairs, unable to properly see and move his walker. Recently, this March 31, 2019, an inmate at Leavenworth Camp had a lethal encounter with stairs, proving the danger that stairs can pose. The inmate died from his injuries April 2.

Petitioner White notes the statistics cited by the government showing the BOP

-4-

has 20 blind inmates. (see the last paragraph, page 13 of the government's response in opposition, document number 216) What the government does not state is that the total inmate population as of 4/4/19 was 180,082. The most recent study, by the U.S. Department of Justice's Bureau of Justice Statistics, found over 7% of all post-conviction prisoners reported they were blind or low vision (uncorrectable with glasses). That would represent roughly 13,000 Federal inmates, yet only 20 were sentenced to time in prison. Of those 20, most are either recently diagnosed as blind or are violent felons. Mr. White does not fit well into this metric, being a non-violent prisoner currently in the lowest level of the prison population, at a camp.

As Mr. White's ADL's become further compromised to the point he is required to locate to a Federal medical facility, he will very likely be punished for his diability where people with disabilities are often placed into solitary confinement even when it serves no penological purpose. "Correction officials have put prisoners into solitary confinement because there were no available cells that could accommodate them in a less restrictive environment." (see ACLU, Caged In: Solitary Confinement's Devastating Harm On Prisoners With Physical Disabilities 6 [2017], https://.aclu.org/sites/default/files/f ield document/01916-aclu-solitarydisability report-single.pdf) The Fourteenth Amendment's Due Process Clause (for pretrial detainees) compel modifications be made to wit, (i) Shall not place inmates or detainees with disabilties in inappropriate security classifications because no accessible cells or beds are available. Yet Mr. White's rights under the Americans With Disabilities Act (ADA) have been continually violated. (see Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Farmer v. Brennan, 511 U.S. 825, 844 (1994), United States v. Georgia, 546 U.S. 151, 157 (2006) and also see the Cruel and Unusual Punishments Clause. 73. 28 C.F.R. Section 35.130(d)) Prisoners with disabilities in various kinds of special housing that are, if not solitary confinement, at least close to

-5-

Case 6:12-cr-03045-MDH Document 217 Filed 04/11/19 Page 5 of 9
Case 6:12-cr-03045-MDH Document 217 Filed 04/11/19 Page 5 of 10

it. These prisoners receive far more lock down time than at a camp setting, have greater restrictions and access to the facility and limit various privileges. They fail to received accommodations for programming and performing jobs in which they are qualified to perform. In short, this violates the dictates of the ADA's regulations. The DOJ filed a brief in 2013, explaining, "[P]risoners with disabilities cannot be automatically place in restrictive housing for mere convenience..." A prison violates the ADA regulation if, for example all blind inmates are forced into harsher environments in order to get treatment. See Coleman v. Brown, 2:90-cv-00520-LKK-DAD (E.D. Cal. Nov. 12, 2013), Disability Advocates, Inc. v. N.Y. State Office of Mental Health, 1:02-CV-04002-GEL (S.D.N.Y. 2007), Armstrong v. Brown, No. 94-cv-02307-CW, 2015 WL 496799 (N.D. Cal. Feb. 3, 2015). Mr. White implores this Court to find a camp setting that can accommodate his handicapping conditions when he starts losing his ADL's. Mr. White should not be further punished by moving him to a more restrictive environment merely because he is blind.

"Title II of the ADA requires that once a diabled prisoner requests a non-frivolous accommodation, the accommodation should not be denied without an individual inquiry as to its reasonableness." Wright v. N.Y. St Dep't of Corr., 831 F.3d 64, 78 (2d cir. 2016). Mr. White requested a braille overlay for the computer so he can stop making so many errors when he attempts to type. The BOP at the Leavenworth Camp was non-responsive, only saying they would look into it. Addtionally, Mr. White applied for a job overseeing an installation of hydroponics, a job he is well qualified for, yet the Leavenworth Camp refused to provide accommodations for his handicapping conditions, in violation of the ADA. The list of violations goes on and on, merely because Mr. White is blind. Prison is not a proper setting and he should have been moved to home confinement some time ago as an appropriate less restrictive setting.

-6-

The First Step Act of 2018 provides an opportunity for programming so that inmates can prepare for transition into the community while earning time credits to move to home confinement a year or more prior to their out date. Yet Mr. White has been denied even the simpliest of accommodations that he might participate in this program. Mr. White is continuously harrassed for being too slow, too old, or just critisized for not being able to see.

### III. Argument

The government correctly states Mr. White's motion can be sustained if he is not a danger to the community and is suffering or experiencing deteriorating physical health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.

The government by and through Dr. Aulepp equates self-care as the activities of daily living (ADL's). The qualification is not for the ADL's to be absent but substantially diminished. Given the circumstances in which Mr. White is faced, he does the best he can to do simple things like navagate to the pill line or the chow hall but often misses one or the other because he is just too slow which is the direct result of depending on a walker to support his weight and largely unable to see.

The government reviews all the other possiblities in which a person could qualify for compassionate release but it only serves to muddle the issue, as Mr. White only needs to qualify as stipulated. BOP records supplied as an addendum to this Court by the government demonstrate that Mr. White is at a camp setting, the lowest restrictive setting available short of home confinement. His record reflects that he is not a danger to the community. And Mr. White, as reflected by his medical records, is not expected to recover from being blind. The loss of vision is permanent and non-reverseable. Mr. White has demonstrated herein that he is

-7-

legally blind and his affliction of macular degeneration is rapidly deteriorating. Dr. Aulepp acknowledges that, "The two conditions that affect his ability to navigate the institution include his macular degeneration and his knee condition. (Attch. 1, item 11) At item 13, Dr. Aulepp concedes, "White's macular degeneration is significant, and he is legally blind in both eyes. It is a progressive disease with no treatment and will continue to progress." The whole point of compassionate release is to allow Mr. White to move to a home setting that will allow him to adjust to his surroundings before going completely blind. Dr. Aulepp reported Mr. White's vision as 20/80 in his right eye and 20/300 in his left eye at item 12.

Mr. White holds he was fully approved for compassionate release and nothing the government presented refuted his claim. Mr. White continues to put forward that his request and motion for compassionate release/reduction in sentence meets the requirements established as modified by the First Step Act of 2018, and therefore Mr. White's motion should be sustained.

### IV. Conclusion

For all the reasons stated, Mr. White's motion should have been mitigated a year ago in 2018 but was not due to the BOP not being able to keep track of their own paperwork. Mr. White therefore respectfully moves this Court sustain his motion for compassionate release/sentence reduction and other such financial relief the Court deems appropriate for having to hold his release residence in limbo for nearly a year.

Respectfully submitted,

*Charles F. White*

Charles F. White
Federal I.D. 05268-045
P.O. Box 1000
U.S.P. Leavenworth Camp
Leavenworth, Kansas 66048

-8-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was deposited into the Leavenworth Camp institutional mail in a postage paid envelope on this 7th day of April, 2019, and mailed to the Clerk of the Court and to Josephine L. Stockard, Assistant United States Attorney at:

United States Attorney
Attn: Josephine L. Stockard
901 E. Saint Louis St
Suite 500
Springfield, Missouri 65806

Clerk of the Court
Suite 1400
222 N. John Q. Hammons Pkwy
Springfield, Missouri 65806

_Charles F. White_
Charles F. White

-9-

Case 6:12-cr-03045-MDH  Document 217  Filed 04/11/19  Page 9 of 10
Case 6:12-cr-03045-MDH  Document 217  Filed 04/10/19  Page 9 of 10